**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISON**

| | | |
|---|---|---|
| CHRISTOPHER HOWSE, | ) | CASE NO. 1:25-cv-00990-SO |
| | ) | |
| Petitioner, | ) | UNITED STATES DISTRICT JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | MAGISTRATE JUDGE REUBEN J. SHEPERD |
| WARDEN ANGELA STUFF, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

## I. Introduction

On May 14, 2025, Petitioner Christopher Howse ("Howse") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF Doc. 1). On May 15, 2025, the matter was referred to me pursuant to Local Rule 72.2 for issuance of a report and recommended decision. (non-document entry of May 15, 2025). Warden Angela Stuff ("Respondent") filed a Return of Writ, state court record, and transcripts with this Court on August 7, 2025. (ECF Docs. 7, 7-1, 7-2). Howse filed his Traverse on December 18, 2025, making the Petition ripe for review. (ECF Doc. 11).

## II. Factual Background

The Ohio Ninth District Court of Appeals set forth the facts on direct appeal. These factual findings are presumed correct unless Howse rebuts this presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1).

> {¶2} Howse used to be friends with J.B.'s boyfriend. After the two men had a falling out, Howse threatened to shoot the house where J.B. and her boyfriend lived. J.B. recalled that threat as she was driving home one evening and spotted Howse's vehicle on her street. She attempted to drive away, but the vehicle began pursuing her. As she reached the end of the street, gunshots rang out, and J.B. accelerated. A brief chase ensued, at the conclusion of which J.B. saw Howse driving the vehicle that was chasing her. She immediately reported the incident to 911 and spoke with the police later that same week.
>
> {¶3} Before she spoke with the police, J.B. and her boyfriend exchanged text messages with Howse and spoke with him on a video chat. During their video chat, Howse once again threatened to shoot their house and pointed a gun at them through the phone. J.B. and her boyfriend took pictures of Howse holding the gun and later provided those pictures to the police.
>
> {¶4} Howse was indicted on each of the following counts: (1) felonious assault; (2) improperly discharging a firearm into a habitation; (3) discharging a firearm on a prohibited premises (i.e., a public road); (4) having a weapon under disability under R.C. 2923.13(A)(2); (5) having a weapon under disability under R.C. 2923.13(A)(3); and (6) improperly handling firearms in a motor vehicle. His indictment also included eleven firearm specifications and two specifications for being a repeat violent offender. The State later dismissed five of the firearm specifications.
>
> {¶5} A jury found Howse guilty on each of his counts and remaining firearm specifications. The trial court then found him to be a repeat violent offender. The court merged several of his counts and specifications as allied offenses of similar import and sentenced him to a total of 28.5 to 31.5 years in prison.

(EFC Doc. 7-1, pp. 128-29; *see also State v. Howse*, 2024 WL 556256, at *1 (Ohio Ct. App., Feb. 12, 2024).

## III. Procedural History

### A. State Court Conviction

On December 22, 2019, Howse was indicted with the following counts: Count One – felonious assault, a second-degree felony in violation of Ohio Revised Code ("O.R.C.") §§ 2903.11(A)(2) and 2903.11(D)(1)(a); Count Two – improperly discharging a firearm at or into a habitation or a school safety zone, a second-degree felony in violation of O.R.C.

§§ 2923.161(A)(1) and 2923.161(C); Count Three – discharge of firearm on or near prohibited premises, a third-degree felony in violation of O.R.C. §§ 2923.162(A)(3) and 2923.162(C)(2); Count Four – having weapons while under disability, a third-degree felony in violation of O.R.C. §§ 2923.13(A)(2) and 2923.13(B); Count Five – having weapons while under disability, a third-degree felony in violation of O.R.C. §§ 2923.13(A)(3) and 2923.13(B); and Count Six – improperly handing firearms in a motor vehicle, a fourth-degree felony in violation of O.R.C. §§ 2923.16(A) and 2923.16(I). (ECF Doc. 7-1, pp. 4-9). Counts One, Two, Three, and Six each carried a three-year firearm specification pursuant to O.R.C. § 2941.145(A) and a 54-month firearm specification pursuant to O.R.C. § 2941.145(D). (*Id.*). Counts One, Two, and Three carried a five year "Drive By Shooting" specification pursuant to O.R.C. § 2941.146(A). (*Id.* at pp. 4-7). Counts One and Two carried a repeat violent offender specification pursuant to O.R.C. § 2941.149(A). (*Id.* at pp. 4-6). Howse was arraigned on December 17, 2020 and entered a plea of not guilty. (*Id.* at p. 10).

On March 9, 2021, Howse, through counsel, moved for change of venue because he was "uncomfortable with the staff at the courthouse due to past personal issues and experiences." (*Id.* at p. 11). Howse's motion was denied on March 15, 2021. (*Id.* at p. 13).

On June 10, 2021, Howse, through counsel, filed a motion to dismiss the complaint and indictment against him because "no rational trier of fact could find beyond a reasonable doubt that [he] caused the victim 'serious physical harm.'" (*Id.* at pp. 14-17). Howse filed a separate motion to dismiss the same day, requesting that his case be dismissed due to pre-indictment delay. (*Id.* at pp. 18-20). The state trial court denied both motions to dismiss without hearing on July 28, 2021. (*Id.* at p. 21).

On August 5, 2021, Howse, through counsel, filed a motion for disclosure of impeaching information requesting the court to direct "the State to investigate and disclose all information with (sic) impeaches or might tend to impeach any person whom the State may call as a witness at trial or any other evidence which in any way impeaches the theory of the state's case." (*Id.* at pp. 22-26). On August 17, 2021, Howse, through counsel, filed a request for the prosecuting attorney to "preserve all video and audio recordings including transcriptions made during the course of the investigation of this case." (*Id.* at pp. 27-28). On August 30, 2021, Howse filed a pro se motion for disclosure of exculpatory evidence.[1] (*Id.* at pp. 29-38). On the same day, Howse filed a separate pro se "motion to compel law enforcement officials to turn over and advise the prosecuting attorney of all information acquired during the course of investigation."[2] (*Id.* at pp. 39-43). On September 16, 2021, the state trial court denied Howse's pro se motions. (*Id.* at p. 44). At this time, there was no ruling on the motion made my counsel. (*See id.*).

On January 19, 2022, the state trial court docketed five orders. (*Id.* at pp. 45-53). In the first order, the court noted that Howse's jury trial was in progress, the state moved to dismiss the three-year firearm specifications attached to Counts One, Two, Three, and Six, and granted the motion. (*Id.* at p. 45). The second order stated that the parties stipulated that Howse had been convicted or pleaded guilty to a firearm specification, been convicted of a felony offense of violence, and been convicted of a felony drug offense. (*Id.* at p. 46). The next order announced the jury's verdict of guilty on all charges and related firearm specifications. (*Id.* at pp. 47-48).

---

[1] In the opening sentence of the handwritten motion, Howse states that his motion was made "through counsel," however it signed on his own behalf, and his signature includes the designation "pro se." (ECF Doc. 7-1, pp. 29, 37).

[2] Howse again states that this handwritten motion is made through counsel, but signs it pro se. (*Id.* at pp. 39, 42).

Howse was sentenced to an aggregate prison sentence of 28.5 to 31.5 years in prison. (*Id.* at pp. 49-53).

**B. Direct Appeal**

Howse, through counsel, appealed his convictions to Ohio's Ninth District Court of Appeals on January 20, 2022. (*Id.* at p. 54). In his appellate brief, Howse raised the following assignments of error:

> MR. HOWSE WAS DENIED DUE PROCESS AND DENIED HIS SIXTH AMENDMENT CONSTITUTIONAL RIGHT TO COUNSEL WHEN PRIVILEGED PHONE CALLS BETWEEN HIM AND HIS ATTORNEY WERE RECORDED FROM THE COUNTY JAIL, LISTENED TO BY THE STATE OF OHIO, AND THE CONTENTS TESTIFIED TO IN OPEN COURT.
>
> THE TRIAL COURT ERRED IN ADMITTING TESTIMONY REGARDING JAIL CALLS WITHOUT PROPER AUTHENTICATION DEPRIVING MR. HOWSE OF HIS RIGHT TO A FAIR TRIAL.
>
> THE VERDICT IN THIS CASE IS AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED BECAUSE IT VIOLATES THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE CONSTITUTION OF THE STATE OF OHIO.
>
> THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE 14TH AMENDMENT TO THE U.S. CONSTITUTION AND OF THE OHIO CONSTITUTION.
>
> THE TRIAL COURT'S ERRORS, WHEN TAKEN TOGETHER AND CONSIDERING THE CUMULATIVE ERROR DOCTRINE, DEPRIVED APPELLANT OF A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION SIXTEEN OF THE OHIO CONSTITUTION DUE PROCESS CLAUSES.

(*Id.* at pp. 55-84). The state of Ohio filed its appellate brief in May 2023. (*Id.* at pp. 85-127). The state appellate court affirmed Howse's convictions on February 12, 2024. (*Id.* at pp. 128-41).

Howse appealed, pro se, to the Ohio Supreme Court on March 25, 2024. (*Id.* at pp. 142-43). In his memorandum in support of jurisdiction, Howse raised the following propositions of law:

> THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF MR. HOWSE AND DENIED HIS SIXTH AMENDMENT RIGHT TO COUNSEL WHEN HIS PRIVILEGED PHONE CALLS WERE RECORDED FROM THE COUNTY JAIL, LISTENED TO BY THE STATE AND THE CONTENTS TESTIFIED TO IN OPEN COURT.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF MR. HOWSE WHEN IT ADMITTED TESTIMONY REGARDING RECORDED JAIL PHONE CALLS WITHOUT PROPER AUTHENTIFICATION [*sic*] DEPRIVING MR. HOWSE OF HIS RIGHT TO A FAIR TRIAL IN VIOLATION OF HIS DUE PROCESS RIGHT OF THE FIFTH AND SIXTH AMENDEMENT [*sic*] RIGHT TO A FAIR TRIAL.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF MR. HOWSE IN THAT THE VE[R]DICT IN THIS CASE IN AGAINST THE SUFFICIENCY OF THE EVIDENCE AND SHOULD BE REVERSED AS IT VIOLATES THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION.
>
> THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION OF AS THE CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND THE OHIO CONSTITUTION.
>
> THE TRIALCOURT [*sic*] ERRED AS A MATTER OF LAW AND TO THE PREJUDICE OF MR. HOWSE WHEN TAKING TOGETHER AND CONSIDERING THE CUMULATIVE ERROR DOCTRINE, DEPRIVED MR. HOWSE OF A FAIR TRIAL AS GUARANTEED BY THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION DUE PROCESS CLAUSES.
>
> APPELLANT [*sic*] COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILURE TO RAISE ON APPEAL THAT THE TRIAL COURT FAILED TO PROPERLY MERGE CONVICTIONS FOR FELONIOUS ASSAULT R.C. 2903.LL(A)(2), IMPROPERLY DISCHARGING A FIREARM AT OR INTO A HABITATION OR SCHOOL SAF[ET]Y ZONE R.C. 2923.161(A)(L), AS ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF R.C. 2941.25

> AND DUE PROCESS OF THE FIFTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
>
> APPELLANT [*sic*] COUNSEL RENDERED INEFFECTIVE ASSISTANCE WHEN HE FAILED TO ARGUE THAT THE TRIAL COURT ERRED WHEN IT FAILED TO MERGE TWO FIFTY-FOUR MONTH GUN SPECIFICATIONS IN VIOLATION OF R.C. 2929.14(D)(L)(B) WHEN THE UNDERLYING OFF[E]NSES WERE COMMITTED AS PART OF THE SAME ACT OR TRANSACTION IN VIOLATION OF REVISED CODE 2941.25 AND THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
>
> APPEL[L]ANT [*sic*] COUNSEL RENDERED INEFFECTIVE ASSISTANCE FOR FAILURE TO RAISE THAT THE APPEALS COURT DISMISS MR. HOWSE'S APPEAL FOR LACK OF A FINAL APPEALABLE ORDER IN VIOLATION OF ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND THE SIXTH, AND FO[U]RTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION.
>
> APPELLANT [*sic*] COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO RAISE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL FOR FAILURE TO SUBP[OE]NA WITNESSES WHICH WERE FAVORABLE TO HIS DEFENSE, FAILURE TO CHALLENGE INCONSISTENT TESTIMONY OF THE STATES WITNESSES, IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

(*Id.* at pp. 144-77). The Ohio Supreme Court struck the final two pages of Howse's memorandum in support of jurisdiction for failure to comply with its rules of practice. (*Id.* at p. 178). On May 14, 2024, the Ohio Supreme Court declined jurisdiction of Howse's appeal. (*Id.* at p. 179); *see also State v. Howse*, 233 N.E.3d 648 (Ohio 2024) (Table).

Howse filed an application to reopen his direct appeal on May 9, 2024. (*Id.* at p. 204). In his application, Howse raised the following proposed assignments of error:

> APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT IN COUNT'S ONE, TWO, THREE, AND SIX 54 MONTH FIREARM SPECIFICATION R.C. 2941.145(D) BECAUSE THE VERDICT FORM FAILED TO MENTION THE DEGREE OF THE OFFENSE OR AN AGGRAVATED ELEMENT OF THE OFFENSE AS REQUIRED BY R.C. 2945.75; THEREFORE, THE APPELLANT

SHOULD HAVE BEEN SENTENCED TO THE LOWEST FORM OF THE OFFENSE.

APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT BECAUSE THE VERDICT FORM FAILED TO MENTION THE DEGREE OF THE OFFENSE OR AN AGGRAVATED ELEMENT OF THE OFFENSE AS REQUIRED BY R.C. 2945.756; THEREFORE, THE APPELLANT SHOULD HAVE BEEN SENTENCED TO THE LOWEST FORM OF THE OFFENSE.

APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO RAISE THE TRIAL COURT ERRED IN SENTENCING THE APPELLANT BECAUSE THE VERDICT FORM FAILED TO MENTION THE DEGREE OF THE OFFENSE OR AN AGGRAVATED ELEMENT OF THE OFFENSE AS REQUIRED BY R.C. 2945.75; THEREFORE, THE APPELLANT SHOULD HAVE BEEN SENTENCED TO THE LOWEST FORM OF THE OFFENSE.

APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO RAISE ON APPEAL THAT THE TRIAL COURT FAILED TO PROPERLY MERGE CONVICTIONS FOR FELONIOUS ASSAULT R.C. 2903.11(A)(2), IMPROPERLY DISCHARGING A FIR[E]ARM AT OR INTO A HABITATION OR SCHOOL SAFETY ZONE R.C. 2923.161(A)(1), AS ALLIED OFFENSES OF SIMILAR IMPORT, IN VIOLATION OF R.C. 2941.25(A), AND DUE PROCESS OF THE FI[F]TH AND FOURTEENTH AMEND[M]ENTS OF THE UNITED STATES CONS[T]ITUTION.

APPELLATE COUNSEL RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILURE TO RAISE ON APPEAL THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBTAIN CELL PHONE RECORDS FOR IMPEACHMENT PURPOSES NOT ONLY TO CONF[IR]M THE WHERE-A-BOUTS, BUT ALSO THE APPELLANT INNOCENCE, AND FOR FAILING TO SUBP[OE]NA WITNESSES WHICH WERE FAVORABLE TO HIS DEFENSE DENIED MR. HOWSE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHEN HE WAS SUBSTANTIALLY AND UNFAIRLY PREJUDICED BY HIS TRIAL COUNSEL. IN VIOLATION OF THE SIX AMENDMENT OF THE UNITED STATES CONSTITUTION.

APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO R[A]ISE ON APPEAL THAT THE TRIAL COURT COMMITTED PREJUDICIAL ERRED BY ADMITTING INADMISS[I]BLE, AND PREJUDICIAL HEARSAY STATEMENTS AND EVIDENCE OF ALLEGED BAD ACTS UNDER R.C. 402, AND 404(B) OVER DEFENDANTS OB[J]ECTIONS WHICH WAS UNFAIR PREJUDICE TO MR. HOWSE WHICH DENIED HIM A FAIR TRIAL.

(*Id.* at pp. 204-16). The state of Ohio opposed the application for reopening. (*Id.* at pp. 217-26). Ohio's Ninth District Court of Appeals denied Howse's application on July 23, 2024. (*Id.* at pp. 227-32). Howse did not appeal this decision to the Ohio Supreme Court.

### C. Post-Conviction Proceedings

Howse filed a pro se petition to vacate or set aside his conviction or sentence on January 12, 2024. (*Id.* at pp. 180-96). The state of Ohio filed a motion to dismiss Howse's petition on January 17, 2024. (*Id.* at pp. 197-201). The state trial court granted the motion to dismiss on March 21, 2024. (*Id.* at pp. 202-03).

## IV. Federal Habeas Corpus Petition

On May 14, 2025 , Howse filed his federal habeas corpus petition, asserting the following Grounds for Relief:[3]

> Ground One: The trial court denied Mr. Howse his Sixth Amendment right to counsel as well as due process as he allowed his attorney client calls to be recorded in the county jail, listened to, and testified about in open court.
>
> Supporting facts: During the course of the trial, the state of Ohio elicited testimony from their detective that he had listened to recorded jail calls between Mr. Howse and his attorney. Mr. Howse believed these conversations to be privleged [*sic*]. Over objection, the contents of this communication was testified to, and the Detective indicated that the substance amounted to an admission of guilt.
>
> Ground Two: Mr. Howse was denied due process of law and a fair trial when his jail calls were testified to absent proper authentification.
>
> Supporting facts: As stated above, in Ground One, the Detective was permitted to testify as to the contents of a jail call, over objection, between Mr. Howse and his attorney. This call was not played in open court, nor was it admitted into evidence, however, the substance of the contents were testified to by the detective, as such the call it self required proper authentification, and it was not authenticated in any manner. There was no testimony as to the nature of the call, the nature of the monitoring, how the detective knew it was Mr. Howse on the recorded call.

[3] The grounds for relief and supporting facts are copied verbatim from the Petition.

> Ground Three: These convictions were against the sufficiency of the evidence and should be reversed pursuant to the Fifth, Sixth, and Fourteenth Amendments to the US Constitition.
>
> Supporting facts: The evidence presented at trial was insufficient to establish Mr. Howse's guilt as to all three (3) counts. Specifically the only witness JB identified Mr. Howse as a shooter, and her incentive to fabricate was prevelent, as she had a prior relationship with Mr. Howse through the father of her children. Additionally, the windows through which she observed the incident were tinted, and that the vehicle that was following her was not Mr. Howse.
>
> Ground Four: The convictions must be reversed as they are violative of the cumulative error doctrine and deprived the Appellant of due process rights [*sic*] under the Fourteenth Amendment.
>
> Supporting Facts: As stated above, there were significant issues within the use of the attorney client communications in the jail call in this matter. Additionally, the entirety of JB's testimony gave raise to concerns about the validity of the charges. As such, under the cumulative error doctrine, reversal is required.

(ECF Doc. 1, pp. 5-10).

## V. Standard of Review

AEDPA applies to Howse's petition for writ of habeas corpus. *Lindh v. Murphy*, 521 U.S. 320, 336 (1997). "As amended by AEDPA, 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This is so because "[s]tate courts are adequate forums for the vindication of federal rights" and AEDPA thus acts as a "formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). As such, AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state-court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (internal citation and quotation omitted).

Under 28 U.S.C. § 2254, federal courts may "entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United

States'" and in most instances, federal courts may not grant habeas relief "unless . . . the applicant has exhausted state remedies." *Cullen*, 563 U.S. at 181, (quoting 28 U.S.C. §§ 2254(a), (b), (c)). Further, if an application for writ of habeas corpus involves a claim that was "adjudicated on the merits in State court proceedings," the application

> shall not be granted . . . unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2); *Cullen*, 563 U.S. at 181; *Harrington v. Richter*, 562 U.S. 86, 100 (2011); *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007). The burden of proof rests with the petitioner. *Cullen*, 563 U.S. at 181.

First, clearly established federal law for purposes of AEDPA review includes "the holdings, as opposed to dicta, of [U.S. Supreme Court] decisions." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to U.S. Supreme Court precedent if the state court arrives at a conclusion opposite that reached by the Court on a question of law or if the state court decides a case differently than the Court despite both cases having materially indistinguishable facts. *Id.* at 405; *White v. Mitchell*, 431 F.3d 517, 523 (6th Cir. 2005), *cert. denied*, 549 U.S. 1047 (2006). However, a state court does not act contrary to clearly established federal law where U.S. Supreme Court precedent is ambiguous or otherwise unavailable. *See, e.g., Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam).

A state court decision is an unreasonable application of Supreme Court precedent where the state court's adjudication was "objectively unreasonable" and not merely erroneous or incorrect. *Williams*, 529 U.S. at 409-11; see also *Machacek v. Hofbauer*, 213 F.3d 947, 953 (6th

Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001). Under § 2254(d)(2), a state court's factual determination will stand unless it is objectively unreasonable in light of the evidence presented in state court. *Harrington v. Richter*, 562 U.S. 86, 100 (2011). "[A] federal habeas court may not grant relief simply because it concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 365.

Next, "a determination of a factual issue made by a State court shall be presumed to be correct. [Petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2554(e)(1). And, as the U.S. Supreme Court has repeated, "a state court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion . . . ." *Burt*, 571 U.S. at 18. Federal courts must also defer to a state court's judgment on issues of state substantive and procedural law. *Murray v. Carrier*, 477 U.S. 478, 491 (1986); *Engle v. Isaac*, 456 U.S. 107, 128-29 (1982).

In all, federal habeas corpus relief is a "guard against extreme malfunctions in the state criminal justice systems," and is different in kind from the relief available in direct appeal. *Harrington*, 562 U.S. at 102-03; *see also Brown v. Davenport*, 596 U.S. 118, 133 (2022) (internal quotation omitted). Thus, to obtain "habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

When a properly presented federal constitutional claim was not adjudicated on the merits in the state courts, the reviewing federal court must apply the pre-AEDPA standard, reviewing de novo questions of law and mixed questions of law and fact. *Durr v. Mitchell*, 487 F.3d 423, 432

(6th Cir. 2007) ("When the state court has not assessed the merits of a claim properly raised in a habeas petition, the deference due under AEDPA does not apply.").

## VI. Procedural Barriers to Federal Habeas Corpus Review

Before coming to federal court, a state habeas petitioner must overcome certain procedural barriers, including exhaustion of state remedies and procedural default. *See Daniels v. United States*, 532 U.S. 374, 381 (2001). A federal court sitting in habeas review may review claims that were evaluated on the merits by the state court. But claims that were not evaluated by a state court, either because they were never fully presented to the state court (*i.e.*, state court remedies were unexhausted) or because they were not properly presented to the state court (*i.e.*, they are procedurally defaulted) are not available for federal habeas corpus review. *Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004), *aff'd sub nom. Bonnell v. Mitchell*, 212 F. App'x 517 (6th Cir. 2007).

### A. Exhaustion

A petitioner must first give the state courts a "*fair*" opportunity to act on his claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (emphasis in original). For a claim to have been fairly presented, the factual and legal basis of the claim asserted by the petitioner must have been raised at each and every stage of state review. *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009); *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). It is not enough for the claim raised in state court to be "somewhat similar" to the one raised in the habeas petition or implicate the same facts; the state court must have been called upon to apply the legal principles of the claim now presented to the federal courts. *Jalowiec v. Bradshaw*, 657 F.3d 293, 304 (6th Cir. 2011).

The petitioner also must have presented their "claim to the state courts as a federal constitutional issue – not merely as an issue arising under state law." *Williams v. Anderson*, 460 F.3d 789, 807 (6th Cir. 2006) (quotation marks omitted). In this Circuit, this can be done in one of four ways:

(1) reliance upon federal cases employing constitutional analysis;

(2) reliance upon state cases employing federal constitutional analysis;

(3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or

(4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (paragraph breaks added).

Failure to exhaust occurs where state court remedies are still "available at the time of the federal petition." *Williams* 460 F.3d at 806. This failure to exhaust can also lead to a petitioner procedurally defaulting his claims. If the petitioner has not fully utilized his state remedies and has no legal mechanism by which to do so now, the claim he failed to present is procedurally defaulted, and this Court cannot act on the claim either. *See Gray v. Netherland*, 518 U.S. 152, 161-62 (1996); *Williams* 460 F.3d at 809.

**B. Procedural Default**

The procedural default doctrine limits federal review if the petitioner has failed to follow the state's procedural requirements for presenting his or her claim in state court. *See Coleman v. Thompson*, 501 U.S. 722, 732 (1991). This doctrine flows from the insight that courts must have the authority to insist that "defendants present their arguments on time and according to established procedures." *Benton v. Brewer*, 942 F.3d 305, 307 (6th Cir. 2019). Thus, a federal habeas court will not consider a habeas petition if "the last state-court judgment denying relief on the claim rests on a procedural state-law ground that is 'independent of the federal question and

is adequate to support the judgement.'" *Lovins v. Parker*, 712 F.3d 283, 295 (6th Cir. 2013) (quotation marks omitted).

This Circuit consults a four-part test to determine whether a petitioner has procedurally defaulted a claim. A petitioner procedurally defaults a claim if: (1) the petitioner fails to comply with a state procedural rule; (2) the state courts enforced the rule; (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim; and (4) the petitioner cannot show cause and prejudice excusing the default. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

Because the procedural-default bar to federal habeas review is harsh, courts have created safety-valves to permit review in limited circumstances. A petitioner can obtain review of procedurally defaulted claims if he or she shows: (1) "cause," *i.e.* that some external factor kept him from complying with the state rule or fairly presenting his claim; and (2) "prejudice," *i.e.* that, assuming the petitioner's constitutional claim has merit, there is a reasonable probability that a different verdict would have resulted if the alleged constitutional violation had not occurred. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012). A petitioner can also obtain review of a procedurally defaulted claim if the procedurally defaulted claim is based on new evidence that the petitioner was factually innocent of the crime of conviction. *See Coleman*, 501 U.S. at 750 ("fundamental miscarriage of justice" exception to procedural default); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim would establish that the petitioner was "actually innocent."). But "[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To overcome procedural default, an actual innocence claim must be supported by

"new reliable evidence . . . that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

## VII. Discussion

### A. Grounds One and Two

Howse's first two grounds for relief are related and will be addressed together. In his first ground for relief, Howse argues that his Sixth Amendment and due process rights were violated when the trial court allowed testimony to be proffered at trial regarding the substance of his recorded jail calls with counsel. (ECF Doc. 1, p. 5). He further contends, in Ground Two, that this was done without proper authentication. (*Id.* at p. 7). Respondent argues that these grounds are procedurally defaulted because Howse failed "to fairly present them to the Ohio courts at the first opportunity." (ECF Doc. 7, p. 13). Alternatively, Respondent asserts that this is an evidentiary matter, which involves only questions of state law. (*See id.* at p. 26). In his Traverse, Howse responds that Ground One was "fairly presented at all points." (ECF Doc. 11, p. 6). With respect to Ground Two, Howse states as follows: "Petitioner acknowledges that solely state laws were cited in the appellate brief, however, fair trial is referenced in the issue presented." (ECF Doc. 11, p. 9). He further acknowledges that simply invoking the words "'fair trial' alone does not preserve an issue for federal review." (*Id.*).

The underpinning for Grounds One and Two is Howse's assertion that his Sixth Amendment and due process rights were violated when the trial court "allowed [Howse's] attorney client calls to be recorded in the county jail [and] listened to . . . ." (ECF Doc. 1, p. 5). However, Howse does not go on to argue the merits of his alleged Sixth Amendment deprivation and how this Court should analyze it on habeas review. More specifically, he does not explain how the recording of his calls with counsel violated his rights nor does he explain how the trial

court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Rather, a review of these grounds demonstrates that, while characterized as a deprivation of his constitutional rights, the main issue stems from an evidentiary ruling made by the state trial court to permit testimony over Howse's objection.

Federal habeas corpus relief "does not lie for errors of state law," *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and this Court is bound by the state court's interpretation of state law. *See, e.g.*, *Wainwright v. Goode*, 464 U.S. 78, 84 (1983). "Federal courts must defer to a state courts interpretation of its own rules of evidence and procedure" when considering a habeas petition. *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

A claim grounded in error of state law is therefore cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process." *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008). "In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review," but habeas relief may be granted if "the state's evidentiary ruling is so fundamentally unfair that it rises to the level of a due process violation." *Wood v. Morrison*, 2021 WL 1327841, at *3 (6th Cir. Jan. 11, 2021); *see also Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). A state court evidentiary ruling generally does not rise to the level of a due process violation unless it offends a principle of justice so rooted in the tradition of the country as to be considered fundamental. *Moreland*, 699 F.3d at 923.

Howse has not made that showing. In his Petition and Traverse, Howse argues that the state trial court erred when it allowed the state of Ohio to "elicit[] testimony from their detective that had listened to recorded jail calls between Mr. Howse and his attorney" and did so without

proper authentication. (ECF Doc. 1, pp. 5, 7; *see also* ECF Doc. 11). Howse generally claims that this violated his Sixth Amendment and due process rights. (ECF Doc. 1, pp. 5, 7). However, I find the mere mention of constitutional rights in the Petition insufficient to establish that the trial court's ruling on a state evidentiary issue so offended a fundamental principle of justice as to cause a due process violation. In his Petition, Howse does not argue how the inclusion of testimony rendered his trial fundamentally unfair. Rather, he simply argues that he disagrees with the court's ruling to allow the testimony over his objection, and does not present an argument as to how this evidentiary ruling specifically violated his federally protected constitutional rights. As such, the alleged error of state law does not provide a basis for federal habeas relief.

I do note that Howse attempts to raise additional legal arguments in support of his contentions in his Traverse. (*See* ECF Doc. 11, pp. 12-16). However, "even well-developed arguments raised for the first time in a reply brief come too late." *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021); *see also Albrecht v. Comm'r of Soc. Sec.*, No.1:14 CV 2116, 2015 WL 4985475, at *6 n.3 (N.D. Ohio Aug. 18, 2015) ("[a]rguments should not be raised or only developed for the first time in a Reply Brief"). That principle is fully applicable to habeas petitions and to arguments raised or elaborated on for the first time in a traverse. *See Banks v. Tibbals*, No. 1:11CV495, 2014 WL 132271, at *16 (N.D. Ohio Jan. 14, 2014) ("It is well-established that new arguments raised for the first time in a traverse, rather than the habeas petition itself, are not properly before the Court and will not be considered"); *Franklin v. Marquis*, No. 5:17-cv-2002, 2019 WL 11816553, at *20 n.12 (N.D. Ohio Oct. 31, 2019), *report and recommendation adopted*, 2021 WL 861614 ("The law is quite clear that arguments presented for the first time in a traverse are waived."); *Olmstead v. Phillips*, 2023 WL 4162542,

at *17 (N.D. Ohio May 31, 2023), *report and recommendation adopted* 2023 WL 4157250. Accordingly, I find that these arguments were made untimely and will not be considered.

I find that Grounds One and Two do not rise to the level of a federal due process violation and are not cognizable in federal habeas corpus and recommend that they be dismissed.

**B. Ground Three**

In his third ground for relief, Howse argues that he was convicted absent sufficient evidence. (ECF Doc. 1, p. 8). In the Return of Writ, Respondent acknowledges that Howse fairly presented this issue to the state courts (*see* ECF Doc. 7, p. 13) however, she argues that this ground should be denied and "the state appellate court's reasonable decision rejecting this ground is entitled to AEDPA deference." (*Id.* at p. 28). Upon review, I agree with Respondent and recommend that Ground Three be denied.

The due process clause requires the State prove beyond a reasonable doubt every fact necessary to constitute the charged offense. *In Re Winship,* 397 U.S. 358, 363-64 (1970). In *Jackson v. Virginia,* 443 U.S. 307 (1979), the Supreme Court established the standard for reviewing constitutional claims challenging the sufficiency of the evidence:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Id.* at 319. Otherwise stated, a petitioner is entitled to habeas corpus relief if, based on the record evidence at trial and in the light most favorable to the prosecution, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Id*. at 324. The Sixth Circuit has aptly described this standard as imposing a "'nearly insurmountable hurdle.'" *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

Furthermore, the state does not have an "affirmative duty to rule out every hypothesis except that of guilty beyond a reasonable doubt." *Id.* at 326. Under this standard, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.*

On federal habeas review of a claim challenging the sufficiency of the evidence, courts are bound by two layers of deference. First, in determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the federal court does not reweigh the evidence, reevaluate the credibility of witnesses, or otherwise substitute its opinion for that of the trier of fact. *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009). Thus, even if the federal court might not agree with the trier of fact's decision to convict, it must uphold the determination if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. *Id.* The second layer of deference, required under AEDPA, extends to the state appellate court's determination so long as it is not unreasonable. *See Tucker v. Palmer,* 541 F.3d 652, 656 (6th Cir. 2008); *see also* 28 U.S.C. § 2254(d)(2). Additionally, as described above, comity principles require federal courts to defer to a state's judgment on issues of state substantive and procedural law, *see Murray v. Carrier*, 477 U.S. 478, 491 (1986), and federal courts must accept a state court's interpretation of state law and its rules of practice, *Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986).

Here, the Ohio Ninth District Court of Appeals thoroughly analyzed the evidence adduced at trial before overruling Howse's sufficiency of the evidence assignment of error. The state appellate court analyzed the claim as follows:

> {¶9} A "firearm" is a "deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C.

2923.11(B)(1). The term "includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." *Id.* "In determining whether a firearm is operable, the trier of fact examines the totality of the circumstances." *State v. Johnson*, 9th Dist. Lorain No. 14CA010688, 2016-Ohio-872, ¶ 8. "Proof of the operability of a firearm can be established by circumstantial evidence * * *." *State v. Clayton*, 9th Dist. Summit No. 26910, 2014-Ohio-2165, ¶ 8. *Accord* R.C. 2923.11(B)(2).

{¶10} J.B. testified that she met Howse through her boyfriend, who had known him for over ten years. The group spent time together on occasion and were familiar with each other's vehicles and residences. A few months before the shooting, a failed business venture cost Howse and J.B.'s boyfriend their friendship. According to J.B., Howse was angry with her boyfriend and threatened to shoot the house where he and J.B. were staying.

{¶11} J.B. was driving home one evening and was on her street when she spotted Howse's vehicle coming toward her. The vehicle passed her as it headed west. She did not see Howse at that time but assumed he was the driver. She knew his mother lived just to the west, so she assumed he was going to see her. Because he had threatened to shoot their house, however, J.B. did not feel safe going home. She decided to pass her driveway and continue driving down the street. Before she reached the end of the street, she saw Howse's vehicle behind her. She testified the vehicle must have turned around to follow her. As the vehicle approached her from behind, J.B. heard gunshots.

{¶12} J.B. testified that, during this incident, she was driving her boyfriend's vehicle. The vehicle was distinct, and it was difficult to see inside because it had tinted windows. When she heard gunshots, J.B. accelerated, and Howse's vehicle gave chase. She testified the chase continued onto another road and reached speeds of over fifty miles per hour. When they reached a commercial area, J.B. decided to briefly slam on her brakes. Her actions caused the vehicle behind her to respond, and she was able to see Howse driving it as he "shot out of the driver's side of the car * * * and then swerved around [her]." She watched Howse accelerate and turn down a street in the distance. When asked if she was 100% sure Howse was the individual who followed her and shot at her vehicle, J.B. responded affirmatively.

{¶13} J.B., her boyfriend, and Howse exchanged text messages within days of the shooting. Howse also initiated several FaceTime calls between them. J.B. told Howse she had called the police and he would be going to jail for his actions. According to J.B., Howse pointed a gun at them through the phone screen and said "he was gonna shoot the house up and he didn't care whose kids were inside." J.B. and her boyfriend used a cell phone to take pictures of Howse as he was pointing a gun at the phone screen. The State introduced copies of the pictures at trial.

{¶14} A resident of the neighborhood where the shooting occurred testified that she was in her daughter' s bedroom when she heard three gunshots. Her home faced

west and abutted the top of a t-intersection. The top street of the intersection ran north south while the bottom street ran west. The evidence showed J.B. was traveling eastbound on the bottom street (i.e., toward the resident's house) with Howse chasing her when gunshots erupted. As the resident listened to the gunshots, a bullet entered her daughter's bedroom and went through the closet. The police were unable to recover the bullet from its resting location, but the State introduced photographs of the damage caused to the resident's home by the bullet.

{¶15} Officer Alan Kubas reported to the resident's home and began documenting the scene. He testified that the police found three .40 caliber shell casings on the street outside. The casings were found at intervals to the west of the t-intersection. Two of the casings sustained damage and appeared to have been run over by a car.

{¶16} Howse challenges the sufficiency of the evidence underlying his convictions for having a weapon under disability and his firearm specifications. He argues that the State failed to prove any gun he held while videochatting with J.B. and her boyfriend was operable, and thus, a "firearm" for purposes of the Revised Code. See R.C. 2923.11(B)(1),(2). He notes that no gun was ever recovered in this matter, so the State was unable to conduct any operability tests. Implicit in his argument is the assumption that his weapons charges stem from the pictures J.B. and her boyfriend took while videochatting with him. His argument overlooks the remainder of the State's evidence regarding the shooting that occurred.

{¶17} Viewing the evidence in a light most favorable to the prosecution, we must conclude that the State presented sufficient evidence of operability. *See Jenks*, 61 Ohio St.3d 259 at paragraph two of the syllabus. As previously noted, the State may prove operability through circumstantial evidence. *Clayton*, 2014-Ohio-2165, at ¶ 8; R.C. 2923.11(B)(2). This is true even in cases where the State is unable to locate the firearm involved in an offense. *See, e.g., Clayton* at ¶ 7-14. The State set forth evidence that Howse repeatedly fired a gun at J.B. She testified that she saw Howse driving his car and heard gunshots immediately after he began pursuing her. The police found shell casings on the street in that area and a bullet hole in a residence to the east of the eastbound pursuit that occurred. Further, the jury heard J.B. testify that Howse repeatedly threatened to shoot at the home she shared with her boyfriend and pointed a gun at them while videochatting. Based on the foregoing evidence, the jury reasonably could have concluded that Howse possessed an operable firearm. Accordingly, his third assignment of error is overruled.

*Howse*, 2024 WL 556256, at *2-3.

Upon review, I find nothing in the court's analysis supports a conclusion that it unreasonably applied federal law or Supreme Court precedent, nor did it unreasonably determine the facts in light of the evidence presented at trial. Howse's argument on habeas review simply

reiterates his disagreement with how the factfinder determined the facts. Applying the double deference required, I find that a rational trier of fact could have found Howse guilty and the state's determination on appeal was reasonable. Accordingly, I recommend that the District Court deny Ground Three.

### C. Ground Four

In his fourth, and final, ground for relief, Howse argues that his due process rights were violated pursuant to the cumulative error doctrine. (ECF Doc. 1, p. 10). Respondent argues that this ground is not cognizable (ECF Doc. 7, p. 36), and in his Traverse, Howse concedes this point (ECF Doc. 11, p. 19). I agree with the parties and find that this ground raises a claim that is not cognizable on federal habeas review.

Section 2254 limits relief to state prisoners who are being held in violation of federal constitutional law. A federal court may only grant habeas relief if the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). When making a determination under subsection (d)(1), this Court must look to the holdings, not the dicta, of Supreme Court decisions. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). "The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief." *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir. 2002). As a result, the Sixth Circuit standard is that "cumulative error claims are not cognizable on habeas because the Supreme Court has not spoken to this issue." *Williams*, 460 F.3d at 816. There can be no "unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington*, 562 U.S. at 101. Because the United States Supreme Court and the Sixth Circuit do not permit federal habeas relief based on

cumulative error, Ground Four is not cognizable in this Court and I recommend that it be dismissed.

## VIII. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1)(A), this Court will grant a certificate of appealability ("COA") for an issue raised in a Section 2254 habeas petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *Cunningham v. Shoop*, 817 F. App'x 223, 224 (6th Cir. 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017) (internal quotation marks omitted); *see also Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

If the District Court accepts my recommendations, Howse will not be able to show that reasonable jurists could disagree with the District Court's resolution of his sufficiency of the evidence claim because Howse did not establish how the state court improperly applied federal law or Supreme Court precedent nor did he demonstrate that the court unreasonably determined the facts in light of the evidence produced at trial. The dismissal of his second and fourth grounds is not debatable among jurists as Howse himself agreed these grounds were not cognizable. Furthermore, Howse will not be able to show that the dismissal of Ground One is improper as it was not argued in his Petion with respect to how the state trial court's evidentiary decision rose to a constitutional violation. I therefore recommend that no certificate of appealability issue in this case.

## IX. Recommendation

For the reasons provided above, I recommend that Howse's Petition for a writ of habeas corpus be denied as to Ground Three and dismissed as to Grounds One, Two, and Four. I further recommend that he be denied a certificate of appealability.

Dated: September 22, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

---

**OBJECTIONS**

**<u>Objections, Review, and Appeal</u>**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

* * *

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).